# EXHIBIT A

CONSULT WITH AN ATTORNEY PRIOR TO SIGNING THIS AGREEMENT AND GENERAL RELEASE. BY SIGNING THIS AGREEMENT AND GENERAL RELEASE, YOU GIVE UP AND WAIVE IMPORTANT LEGAL RIGHTS.

## AGREEMENT AND GENERAL RELEASE

John Harrison, (hereinafter referred to as "Employee") understand and, of his own free will, enter into this Agreement and General Release ("Agreement") with Vendomatic (the "Company") and, in consideration of the settlement of alleged back wage payments (collectively "back wages") described, herein, agree as follows.

1. **Settlement of Back Wages:** Employee alleges that he is due back wages for regular and overtime hours worked prior to the date hereof. Company agrees to pay Employee Two Thousand Five Hundred Dollars ($2,500.00) less deductions required by law in settlement of these alleged back wages, if, and only if, he signs this Agreement and comply with its terms. Employee understands that the Company will not be required to provide this settlement until after this Agreement become effective.

2. **Future Wages:** Employee and Company have agreed to a pay structure that is the greater of a minimum rate that includes hourly wages and overtime for all hours worked over forty each week or a 9% commission rate for all future wages. The parties have also agreed to pay mileage in addition to hourly wages.

3. **No Further Back Compensation Due:** Employee represents, warrants and acknowledges that the Company owes him no further back wages for salary, commissions, bonuses, sick pay, personal leave pay, or other compensation or benefits, or payments or form of remuneration of any kind or nature, other than his regular wages for the period covering November 28 through December 11, 2016 and moneys specified in paragraph 2 hereof or otherwise specifically provided for in this Agreement.

4. **Non-Admission:** Employee understands that this Agreement does not constitute an admission by the Company of any: (i) liability; (ii) violation of any federal, state or local law, regulation, order or other requirement of law; (iii) breach of contract, actual or implied; (iv) commission of any tort; or (v) other civil wrong.

5. **General Release:** Employee realizes there are many laws and regulations prohibiting employment discrimination, retaliation for opposing unlawful acts or otherwise regulating employment or claims related to employment pursuant to which Employee may have rights or claims. These include, without limitation, Title VII of the Civil Rights Act of 1964, as amended, including the Equal Employment Opportunity Act of 1972; the Age Discrimination in Employment Act of 1967, as amended ("ADEA"); the Americans with Disabilities Act of 1990; the National Labor Relations Act, as amended; The Employee Retirement Income Security Act of 1974, as amended; the Civil Rights Act of 1991; the Family and Medical Leave Act of 1993; the Workers Adjustment and Retraining Act of 1988; 42 USC §1981; the Sarbanes-Oxley Act of 2002; and federal, state and local wage payment, minimum wage, human rights, fair employment, and other laws. Employee also understands there are other statutes and laws of

contract and tort otherwise relating to his employment. Employee intends to waive and release any rights he may have under these and other laws, and under laws of contract and tort, but he does not intend to nor is he waiving any rights or claims that may arise under the ADEA after the date that he signs this Agreement.

In exchange for Employee's receipt of this back wage settlement, on behalf of himself, his heirs, and personal representatives, he hereby releases and discharges the Company from any and all charges, claims, and actions arising out of his employment to date with the Company, except a charge, claim or action based upon rights or claims that may arise after the date that Employee signs this Agreement. If Employee violates this Agreement by filing or bringing any charges, claims or actions contrary to this paragraph, except for filing a charge or complaint with the Equal Employment Opportunity Commission, in addition to any other remedies that may be available to the Company, including, but not limited to, remedies for breach of contract, Employee will pay all costs and expenses of the Company in defending against such charges, claims, or actions brought by Employee or on his behalf, including reasonable attorneys' fees.

As used in this Agreement, the Company includes its parents, subsidiaries, affiliates, and divisions and it and their respective: (i) predecessors, successors, and assigns and (ii) past and present directors, officers, representatives, shareholders, agents, employees, and their respective heirs and personal representatives of any of them.

6. **Confidentiality**: Employee agrees that he will not at any time talk about, write about or otherwise publicize the terms or existence of this Agreement or any fact concerning its negotiation, execution or implementation. He will not testify or give evidence in any forum concerning the Company or his employment with the Company unless required by law or requested to do so in writing by an authorized official of the Company.

7. **Non-Disparagement**: Employee agrees that he will not at any time disparage or denigrate the Company, orally or in writing.

8. **No Pending Claims**: Employee represents and agrees that he has not filed any lawsuits or arbitrations against the Company, or filed or caused to be filed any charges or complaints against the Company, with any municipal, state, or federal agency charged with the enforcement of any law. Pursuant to and as a part of Employee's release and discharge of the Company, as set forth herein, with the sole exception of Employee's right to bring a proceeding pursuant to the Older Workers Benefit Protection Act to challenge the validity of his release of claims pursuant to the Age Discrimination in Employment Act ("ADEA"), he agrees, not inconsistent with EEOC Enforcement Guidance On Non-Waivable Employee Rights Under EEOC-Enforced Statues dated April 11, 1997, and to the fullest extent permitted by law, not to sue or file a charge, complaint, grievance, or demand for arbitration against the Company in any forum or assist or otherwise participate willingly or voluntarily in any claim, arbitration, suit, action, investigation, or other proceeding of any kind that relates to any manner that involved the Company, and that occurred up to and including the date of Employee's execution of this

2

Agreement, unless required to do so by court order, subpoena, or other directive by a court, administrative agency, arbitration panel, or legislative body, or unless required to enforce this Agreement. To the extent any such action may be brought by a third party, Employee expressly waives any claim to any form of monetary or other damages, or any other form of recovery or relief in connection with any such action. Nothing in the foregoing paragraph shall prevent Employee (or his attorneys) from (i) commencing an action or proceeding to enforce this Agreement or (ii) exercising his right under the Older Workers Benefit Protection Act of 1990 to challenge the validity of his waiver of ADEA claims set forth in paragraph 5 of this Agreement.

9. **Future Cooperation**: Employee agrees that he will assist and cooperate with the Company in connection with the defense or prosecution of any claim that may be made against or by the Company, or in connection with any ongoing or future investigation or dispute or claim of any kind involving the Company, including any proceeding before any arbitral, administrative, judicial, legislative, or other body or agency, including testifying in any proceeding to the extent such claims, investigations, or proceedings relate to services performed or required to be performed by Employee, pertinent knowledge possessed by Employee, or any act or omission by Employee. Employee further agrees to perform all acts and execute and deliver any documents that may be reasonably necessary to carry out the provisions of this paragraph.

10. **Termination of Prior Agreements**: With the exception of the Employee Confidentiality, Non-Disclosure, Non-Solicitation and Non-Competition Agreement (the "Confidentiality Agreement") that Employee signed on or about the 25th day of May, 2013, this Agreement constitutes the entire agreement between the Company and Employee, and supersedes and cancels all prior and contemporaneous written and oral agreements, if any, between the Company and Employee. Employee affirms that, in entering into this Agreement, he is not relying upon any oral or written promise or statement made by anyone at any time on behalf of the Company. Employee further acknowledges that the terms and conditions of the Confidentiality Agreement remain in full force and effect and he reaffirms the Confidentiality Agreement with its terms.

11. **Successors and Assigns**: This Agreement is binding upon Employee and his successors, assigns, heirs, executors, administrators, and legal representatives.

12. **Jurisdiction and Venue**: This Agreement shall be deemed to have been made within the County of Frederick, State of Maryland. Notwithstanding the foregoing, the Agreement shall be interpreted, construed and enforced in accordance with the laws of the State of Maryland and before the Courts of the State of Maryland in the County of Frederick. Employee hereby consents to the jurisdiction of such courts for the enforcement of this Agreement and waive trial by jury.

13. **Illegality and Severability**: If one or more provisions or terms of this Agreement shall be ruled void or unenforceable, the Company may elect to enforce the remainder of this

Agreement, or cancel it and get back from Employee, his successors, or assigns or otherwise any consideration paid.

14. **OWBPA's EEOC Saving Clause and ADEA Waiver Requirements**: Employee understands that this Agreement may not affect the rights and responsibilities of the Equal Employment Opportunity Commission to enforce the ADEA or be used to justify interfering with the protected right of an employee to file a charge or participate in an investigation or proceeding conducted by the EEOC under the ADEA.

15. **Timing Clauses as Required by OWBPA**: Employee acknowledges that he was given a copy of this Agreement on December 14, 2016. He has had an opportunity to consult an attorney before signing it and was given a period of at least 45 days, or until January 30, 2017, to consider this Agreement. Employee acknowledges that in signing this Agreement, he has relied only on the promises written in this Agreement and not on any other promise made by the Company.

Employee has seven days to revoke this Agreement after he signs it. This Agreement will not become effective or enforceable until seven days after the Company has received Employee's signed copy of this Agreement.

**IN WITNESS WHEREOF**, this Agreement has been duly executed on the _____ day of _____, 201__.

EMPLOYEE:                                         VENDOMATIC, INC.

_____          _____
John Harrison                                     By: Donald J. Goletz, President

County of _____ )
State of _____ )

On the _____ day of _____ in the year 201___ before me, the undersigned, personally appeared John Harrison, personally known to me or proved to me on the basis of satisfactory evidence to be the individual whose name is subscribed to the within instrument and acknowledged to me that he executed the same by his signature

_____
Notary Public

My Commission Expires: _____

4