

Peter T. Shapiro
77 Water Street, Suite 2100
New York, New York 10005
Peter.Shapiro@lewisbrisbois.com
Direct: 212.232.1322

Adam E. Collyer
Adam.Collyer@lewisbrisbois.com
Direct: 646.783.1723

July 7, 2017                                                         File No. 37986.702

**VIA ECF**

The Honorable Debra Freeman
Chief Magistrate Judge
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007-1312

      Re:    *John Harrison v. Vendomatic, Inc., et al.*
              Docket No.: 17-CV-00331 (GHW)

Dear Judge Freeman:

    We are counsel to Vendomatic, Inc. ("Vendomatic") and Robert Walizer ("Walizer") (collectively, "Defendants") in the above-referenced matter. We write jointly with counsel for Plaintiff John Harrison ("Plaintiff") to respectfully request that the Court approve the settlement reached herein with Plaintiff. We are asking that the settlement be approved and that this action be dismissed with prejudice as to Plaintiff's individual claims.

    In this action, Plaintiff alleges, *inter alia*, that Defendants failed to pay the minimum wage, overtime, and other wages in violation of the Fair Labor Standards Act ("FLSA") and New York Labor Law ("NYLL") to him and to members of a putative nationwide class and collective, and he also asserts a retaliation claim pursuant to the FLSA. Defendants deny all of the allegations made against them. In furtherance of the parties' mutual desire to avoid the burdens and expense of protracted litigation and to resolve their dispute, they have entered into a settlement, which the parties now request the Court approve as fair and reasonable. The settlement was achieved via a mediation under the Court's auspices conducted on April 11, 2017.

    In this regard, the parties represent to the Court that the Agreement: (a) is fair and equitable to all Parties; (b) reasonably resolves a *bona fide* disagreement between the Parties with regard to the merits of the Plaintiff's claims; (c) contains monetary consideration for the Plaintiff;

The Honorable Debra Freeman
July 7, 2017
Page 2

and (d) discontinues the action, with prejudice, and on consent. The parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of these claims with prejudice, in exchange for the consideration set forth in the Release. The Release is the result of arduous arms-length bargaining among the parties and reflects parties' desire to settle and compromise fully and finally all of Plaintiff's wage-and-hour claims asserted in this case and any potential other claims that Plaintiff has stated his willingness to compromise as part of the agreed-upon settlement terms.

### I.      The Standard

It is well-established that "[c]ourts approve FLSA settlements where they are reached as a result of contested litigation to resolve *bona fide* disputes." *Aboud v. Charles Schwab & Co.*, No. 14 Civ. 2712 (PAC), 2014 U.S. Dist. LEXIS 157205, at *10 (S.D.N.Y. Nov. 4, 2014) (citing *Lynn's Food Stores, Inc. v. United States*, 679 F.2d 1350, 1353 n. 8 (11th Cir. 1982)); *Clark v. Ecolab Inc.*, No. 04 Civ. 4488 (PAC), 2010 U.S. Dist. LEXIS 47036, at *24 (S.D.N.Y. May 11, 2010); *Johnson v. Brennan*, 10 Civ. 4712 (CM), 2011 U.S. Dist. LEXIS 105775, at *35 (S.D.N.Y. Sept. 16, 2011); *Diaz v. E. Locating Serv. Inc.*, No. 10 Civ. 04082 (JCF), 2010 U.S. Dist. LEXIS 139136, at *15 (S.D.N.Y. Nov. 29, 2010); *deMunecas v. Bold Food LLC*, No. 09 Civ. 00440 (DAB), 2010 U.S. Dist. LEXIS 87644, at *17 (S.D.N.Y. Aug. 23, 2010); *see also Garcia v. Pancho Villa's of Huntington Vill., Inc.*, No. 09 Civ. 486 (ETB), 2012 U.S. Dist. LEXIS 144446, at *15 (E.D.N.Y. Oct. 4, 2012) ("the high standard for approval of a class action [settlement] under Rule 23 does not apply to an FLSA settlement").[1]

Moreover, "[t]ypically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement." *deMunecas,* 2010 U.S. Dist. LEXIS 87644, at *20. That is, as long as the FLSA settlement "reflects a reasonable compromise over contested issues, the settlement should be approved." *Id.* at *17. The more lenient approach to approval of FLSA settlements is prudent given that an FLSA settlement implicates only the rights of the individuals who have affirmatively joined the action.

### II.     The Settlement Agreement Is Fair and Reasonable And Should Be Approved

"Before a court will find a settlement fair and reasonable, the parties must provide enough information for the court to examine the *bona fides* of the dispute." *Guareno v. Vincent Perito, Inc.*, No. 14-CV-1635 (PAC), 2014 U.S. Dist. LEXIS 144038, at *2 (S.D.N.Y. Sept. 26, 2014). Here, the Settlement Agreement was clearly "reached as a result of contested litigation to resolve *bona fide* disputes." *Aboud*, 2014 U.S. Dist. LEXIS 157205, at *10. Indeed, the settlement in this

---

[1] Virtually all FLSA settlement approval decisions published within the Second Circuit also involve a Rule 23 class action release, and the decisions track the detailed Rule 23 fairness factors. In such decisions, the more stringent Rule 23 approval standards may appear conflated with the FLSA approval standards.

The Honorable Debra Freeman
July 7, 2017
Page 3

matter was only reached after a complaint was filed and answered, an amended complaint was filed, the parties had exchanged documents and information and had produced payroll records, correspondence, and company policies and procedures, the parties drafted and submitted mediation statements to the Court-appointed mediator, and attended a full-day mediation in an attempt to resolve the matter.

In this action, Plaintiff alleges Vendomatic engaged in an "illegal scheme" pursuant to which it failed to pay Plaintiff minimum wages or the overtime premium each week due to the way his compensation was structured throughout the course of his employment. Complaint, ¶¶ 28 and 30. Specifically, Plaintiff, who managed and serviced vending machines for Vendomatic in New York City and the suburbs, alleges that he was paid a percentage of the monies collected on his weekly route for a portion of the time he was employed. Plaintiff further alleges that he worked in upwards of 30 hours of overtime each week. Because of this claimed extensive overtime, Plaintiff alleges that his weekly pay did not cover all of the wages to which he was entitled, in accordance with the FLSA. Further, Plaintiff alleges that he was terminated in January 2017 in retaliation for complaining about these issues to Vendomatic's management team in November 2017.

In response, Vendomatic maintains that Plaintiff did not actually work the number of hours he claims to have worked, and that the records it maintains of the serviced vending machines would disprove Plaintiff's claims. Moreover, while Plaintiff was paid in multiple ways during his tenure with the company, Plaintiff's weekly take home pay was higher than the minimum wage and accounted for any overtime he claims to have worked. Finally, Vendomatic contends that Plaintiff was not fired in retaliation for reporting alleged wage payment issues, but rather due to his inadequate performance.

Plaintiff was employed between May 2013 and January 2017. Assuming Plaintiff worked every single week in which he was employed by Vendomatic, Plaintiff would have worked 191 total weeks.[2] Assuming he was paid the minimum wage and corresponding overtime premium during his alleged 70 hour workweeks, Plaintiff would have been due a total of $140,781.25. That is not a realistic amount as it does not account for weeks he did not work due to vacation, illness and injury and the like.

Even accepting that figure for purposes of illustration, it is necessary to subtract from the total claims the amount the parties agree that Vendomatic already paid Plaintiff - $83,511.85 - over

---

[2] Note that Plaintiff did not work for significant stretches of time during this period due to various maladies, including an injury that resulted in his filing a Worker's Compensation claim. Additionally, the manner in which Plaintiff was paid was changed at his request from a commission-based structure to the hourly minimum wage on November 28, 2016. Accordingly, Plaintiff's actual time worked amounts to less than the 191 weeks estimated above for calculation purposes.

The Honorable Debra Freeman
July 7, 2017
Page 4

the course of his employment.  Thus, assuming Plaintiff actually worked 70 hours per week, Plaintiff would only be entitled to at most $57,269.40 in unpaid wages.  Should the Court find that Vendomatic "willfully" violated the FLSA, Plaintiff would be entitled to liquidated damages that would double any amount he is owed.  Thus, an agreement to pay Plaintiff $125,000.00 provides far more than Plaintiff would have been paid in minimum wages and overtime in order to resolve Plaintiff's claims, and is a fair compromise based on the risk that both parties face in moving forward in litigation, the great deal of difficulty Plaintiff would face establishing he worked 70 hours per week each week for over three years and he likely would not be entitled to liquidated damages. The disputed value of Plaintiff's retaliation claim is also accounted for in this total, as well as attorneys' fees and costs. Further, it was agreed that the parties would mutually release any potential other claims for relief that could have been raised in this action so that the settlement would finally resolve all issues between Plaintiff and Vendomatic.

Given these disputed issues, both parties and their counsel submit that this settlement is fair and reasonable.  *See Meigel v. Flowers of the World, NYC, Inc.*, 2012 U.S. Dist. LEXIS 2359, at *2-3 (S.D.N.Y. Jan 9, 2012) ("Typically, courts regard the adversarial nature of a litigated FLSA case to be an adequate indicator of the fairness of the settlement.  If the proposed settlement reflects a reasonable compromise over contested issues, the court should approve the settlement"). Further, ongoing litigation would also likely involve costly motion practice over discovery issues, class and collective certification, and summary judgment, in addition to other expenses associated with trial.  In the instant case, the parties arm's-length bargaining over an eight hour Court-mandated mediation that resulted in a mediator's proposal accepted by both parties, as well as the ability to resolve the matter without either party incurring further substantial litigation costs, are factors that weigh in favor of finding the settlement fair and reasonable. Finally, this case does not involve the litigation of particularly novel and complex issues. Rather, the wage-and-hour claims brought by Plaintiff involve legal issues that have been litigated in many other cases, and therefore continued litigation likely would not significantly advance the development of the law. In short, this is a case in which the Court's program for early mediation of wage and hour claims worked in exemplary fashion and approval of the settlement would support the Court's stated goals in adopting that program.

That this action was styled as a class and collective action should not bar the approval of the settlement. Plaintiff would not be able to prove that he was treated in the same fashion as other employees. This is not an appropriate case for a multi-state class or collective. Plaintiff's claims are subject to New York law, whereas employees in other states are subject to other laws. The terms and conditions of their employment vary. Plaintiff alone has a retaliation claim based on his termination, as a result of which his claims are not typical of the other putative class and collective members' claims and he might have a conflict with their interests and he would therefore not be a suitable class representative. The terms on which he was paid varied at different times, and his terms and conditions would vary from those of other employees. If other employees believe they have the basis for any claims, which the company would dispute, there would be no impediment to their filing a new action and seeking all available relief in the appropriate jurisdiction.

The Honorable Debra Freeman
July 7, 2017
Page 5

### III. <u>The Attorneys' Fees and Costs Payable Under the Settlement Agreement Are Reasonable and Due to be Approved</u>

The settlement agreement also provides that, one-third of the settlement fund will be paid to plaintiff's counsel as a contingency fee, inclusive of costs. As this Court and others have repeatedly held "[c]ontingency fees of one-third in *FLSA* cases are routinely approved in this Circuit." *Ramirez v. Greenside Corp.*, 2017 U.S. Dist. LEXIS 30527, at *9 (S.D.N.Y. March 3, 2017) (Pitman, J.), citing *Santos v. EL Tepeyac Butcher Shop Inc.*, 15 Civ. 814 (RA), 2015 WL 9077172 at *3 (S.D.N.Y. Dec. 15, 2015) (Abrams, D.J.) ("courts in this District have declined to award more than one third of the net settlement amount as attorney's fees except in extraordinary circumstances"); Rangel v. 63 *9 Grand St. Meat & Produce Corp., No. 13-CV-3234 (LB), 2013 WL 5308277 at *1 (E.D.N.Y. Sept. 19, 2013)* (approving attorneys' fees of one-third of *FLSA* settlement amount, plus costs, pursuant to plaintiff's retainer agreement, and noting that such a fee arrangement "is routinely approved by the courts in this Cir-cuit"); *Febus v. Guardian First Funding Group, LLC, 870 F. Supp. 2d 337, 340-41 (S.D.N.Y. 2012)* (Stein, D.J.) ("a fee that is one-third of the fund is typical" in *FLSA* cases); *accord Calle v. Elite Specialty Coatings Plus, Inc.*, No. 13-CV-6126 (NGG)(VMS), 2014 WL 6621081 at *3 (E.D.N.Y. Nov. 21, 2014); Palacio v. E*TRADE Fin. Corp., 10 Civ. 4030 (LAP), *2012 WL 2384419 at *6 (S.D.N.Y. June 22, 2012)* (Freeman, D.J.).[3]

In line with this authority, the Parties respectfully submit that Plaintiff's counsel's 1/3 contingency fee, which includes out-of-pocket costs, is reasonable and should be approved.

### **CONCLUSION**

For the foregoing reasons, it is respectfully requested that the Court approve the settlement in this matter as set forth above and in the Settlement Agreement, and enter the proposed Order discontinuing the action with prejudice.

We would be pleased to attend a conference to address this matter if the Court so requires.

Thank you for your attention to this matter.

---

[3] To date, Plaintiff's undersigned counsel has expended 57.8 hours of attorney time and 3.2 hours of paralegal time, bringing this case to a successful conclusion on behalf of Plaintiff. Plaintiff's undersigned counsel has been practicing law in New York since 2001 and is a nationally recognized wage and hour attorney. If Plaintiff were seeking a lodestar fee, which he is not, Plaintiff's counsel's hourly rate would likely reasonably be valued at $500 or more.

The Honorable Debra Freeman
July 7, 2017
Page 6

                    Respectfully,

                    *Peter T. Shapiro*
                    *Adam E. Collyer*

                    Peter T. Shapiro of
                    Adam E. Collyer for
                    LEWIS BRISBOIS BISGAARD & SMITH LLP

PTS:AEC
Encls.

cc:      Counsel of Record